Mr. Miller, when you're prepared, please proceed. May it please the Court, good morning. My name is Darren Miller and I represent the defendant Anfernee Rondeau on this matter. After a jury trial, Mr. Rondeau was convicted of aggravated sexual abuse of a minor, and we raised two issues on this appeal. The first is the sufficiency of the evidence argument that the government failed to prove the requisite sexual act. And the second argument is that plain error occurred when the government improperly infused polygraph refusal evidence into this trial. Today, I tend to focus on the polygraph refusal argument. In St. Clair, this Court held that it is improper for a witness to testify whether or not a criminal defendant refused to submit to a polygraph test. Additionally, in St. Clair, this Court noted that even a cautionary instruction will not remedy that great prejudice. It may, though. I'm sorry? It says it may cure it, but it may not. Correct. Right. Proceed. And I want to just follow up on that. This is very different than St. Clair in terms of the way it was raised. I think it was raised here not to show that he was innocent or guilty, but it was raised here to show that the confession he made was particularly credible. We didn't have any of the cases, St. Clair and afterwards, we didn't have those circumstances where it actually might have been admissible for a different purpose other than innocence or guilt. And I wonder if, honestly, I wonder whether St. Clair even applies here. Because it's 403 balancing. It's based on 403 balancing. Yes, Your Honor. I think if you look at St. Clair, the issue is whether the defendant's credibility is vital to the case. And what you have here is, it's essentially Mr. Randu's trial testimony versus the written statement. And by infusing the polygraph refusal evidence, that essentially bolstered the written statement and undermined his credibility at trial. It did, but for a different reason than we normally have in St. Clair. Because it bolstered it by saying the reason why he did it was to avoid the polygraph. Like he confessed because he didn't want to take the polygraph. It's not he didn't take the polygraph because he's innocent or guilty. It's that that's why he confessed. So you should believe the confession over his trial testimony. And that's different than St. Clair. It is different, Your Honor, but I believe the same principles apply. It's still the defendant's credibility is being undermined by the infusion of this polygraph refusal evidence. The other problem I have with it, and this is not your problem, this is our problem, but I want to raise it anyways, which is we're the only circuit that does this. We're the only circuit with a St. Clair. Every other circuit recognizes that polygraph evidence may be admissible in certain circumstances. We're the outlier. And I just, again, have to wonder whether because this is admissible for a different purpose than in St. Clair, whether we should join the other circuits as to at least this application. That may be, Your Honor, but I did look at some other circuits, and I'm not aware of any circuit that's held that polygraph evidence is admissible essentially to undermine the defendant's credibility at trial. Well, what's the closest case in another circuit if you look at these other circuits' cases? I didn't note it, Your Honor. I'm sorry. That's fine. Sure. But there was a second... And that's a 28J function. Yeah. If you think there's a case that's like this, I didn't see it in the briefs. Correct. I don't think. But I didn't know that it would be pertinent. No, I didn't. And so, and there is a Seventh Circuit case, and I don't recall the name, where they emphasize the polygraph evidence also implicates the defendant's right to remain silent. So you have these competing interests, and I don't believe that... Maybe I'm wrong, but I know this circuit doesn't, it's basically black-letter law, that polygraph refusal evidence is inadmissible. Yet here, there was a court ruling by the district court that allowed the defense to ask questions about whether the pre-polygraph interview was recorded or not. And if that opened the door, so be it. But the government did not wait for the door to open. So it's not a categorical rule, right? I mean, that's the point I'm getting at. I mean, here we have, you're acknowledging, I think trial, I don't know if you're trial counsel, but trial counsel acknowledged that it was, that opening the door would have been different, didn't object to that. And if that's true, then polygraph evidence is at least admissible in some circumstances if you, you know, at least if you open the door. That's correct, Your Honor. I'm not necessarily disputing that hypothetically polygraph evidence, and I guess it's, you have to make a distinction between polygraph evidence and polygraph refusal. Fair. Because defense counsel never asked for evidence, and there is no ruling here that, yeah, we can get into the refusal for the polygraph, and that's where Sinclair is. And then notably, I mean, the government doesn't even address the trial error in its brief. The government only addresses its rebuttal closing argument and tries to justify it that it was somehow responsive. But when you look at the argument that it made, it wasn't responsive. It wasn't, it didn't tell the jury that, oh, this isn't responsive to a specific argument defense counsel made. It was essentially just doubling down on the polygraph refusal bolsters the written statement and undermines. When you talk about Agent Kane's sentence, is that what you're talking about, that it was not objected to? The sentence I have is, I quote, I don't think it's a good idea for me to continue on with the polygraph examination. Kane testified. Rundu said that. Right? Yes. And that wasn't objected to. That's correct. Is that the sentence you're talking about? You say the government didn't respond to? Well, no. I was talking about there was no argument that defense counsel made. That's a trial error, Your Honor. That's one thing. What I was referring to was the error in the government's closing argument. Well, I understand that. Again. Which one you're saying, which one of those you're saying that they didn't talk about, the government didn't talk about? Well, they did talk about its closing. I was saying it wasn't to rebut any point made by defense counsel, if you look at how the argument was made. It looks like I'm low on time. I'd like to reserve for rebuttal. All right. Thank you. Mr. Parsons? Thank you, Your Honor. Ron Parsons for the United States. May it please the Court and my friend at counsel's table. Here, a 13-year-old girl heard her 6-year-old cousin crying from behind a propped-up bedroom door, and she looked through the gap and she saw the defendant moving up and down on the child with his pants unzipped, and that brave 13-year-old girl ran in and pushed Anthony Rondeau off her little cousin, saw the girl pull up her pants and her underwear, as she was still on her back, and carried her out. This was aggravated sexual assault of a child under 12, half that age, proved beyond a reasonable doubt by a jury, including with male DNA evidence inside the little girl's underwear and on her external genitalia. But I will talk about the polygraph issue. It's a course governed by the plain error standard. No error is plain on this record because the defendant had expressly withdrawn his motion in limine. Then a curative instruction was drafted by the defendant and given verbatim by the district court judge. Then, after that happened, the defendant himself elicited testimony about the polygraph through his defense counsel. That was the first time the polygraph was brought up after the curative instruction was settled, was by the defendant himself in his own testimony. Then, during rebuttal, the defendant, who was really trying to have it both ways on this, at first, don't let the polygraph in, but we want to make hay with the fact, hey, you didn't record this interview. You switched tactics. This was a big manipulation. We don't have the recording. The defendant made a motion in limine to keep that out because there was indications that was going to be the strategy. Once the polygraph's out, you're going to try to make hay with why wasn't it recorded. Well, it wasn't recorded because that's not the procedure in the polygraph, and the polygraph was going to be recorded. So the defendant said they can't have it both ways. What that led to was then a misunderstanding about what the court had actually ruled, that the district court itself actually shared that misunderstanding. Both counsel thought it had been withdrawn. The defense wanted the polygraph evidence in. The government wanted it in if it was going to be needed to explain why the interview wasn't recorded, the confession interview wasn't recorded. So the understanding was that you could not make hay, you know, don't dwell on the polygraph, but this would open the door to it. So where does this fit in, though, in the plain air analysis? So it's not substantial rights, and St. Clair is categorical, which would usually mean that the error is plain. In other words, the idea behind plain air is it's the district court has an obligation to raise its sua sponte. That's sort of the idea behind it because it's so plainly erroneous. Where does your argument fit in on the plain air analysis? I would tend to agree with your earlier comments that really St. Clair isn't categorical. First of all, it was dictum, but more importantly, it adopted the Fourth Circuit's Brevard test where there is a weighing. And so I would suggest that this Court in NC, which was not a polygraph case, but NC in 2001, this Court distinguished St. Clair and said that was really a unique circumstance where it really was two people telling a different story with no other evidence. It was a swearing contest, you know, who's telling the truth? Here, we don't have that at all. We have an eyewitness. We have DNA. We have other things. So I would suggest that NC says a curative instruction is almost always sufficient. We tend to believe, you know, juries follow instructions. We assume they do. And so St. Clair's got a rule on that, too, counsel, which is, is it critical to assessing the witness's credibility? Who asked Agent Cain the question that he, you heard me quote the sentence. Who asked Agent Cain that question? The government asked the question. And is that a clear violation of St. Clair? I don't think it was because... Oh, boy. Yeah. Yeah. I don't think it was... Braddau says it's not a good idea for me to continue on with a polygraph examination. Yeah. Polygraph was brought up, but I don't think it's plain error because the... But you think it's an error at all? You think it's not an error at all? I think that this Court has never said categorically if the word polygraph comes in, there's a motion for a new trial that's going to be granted. I don't think that's a categorical. I think there's a laying, which is implicit in the adoption of the Fourth Circuit's test. But even if it is an error, I want to go back to my stronger ground here, Your Honor. Yes, Your Honor. Even if it is an error, it's not plain error. And the district court said, when the motion for mistrial was made, the district court said, I allowed, I agree, my understanding is both sides could talk about the polygraph. That was the district court's ruling on the motion for mistrial. It was fair game. Don't dwell on it, but it's fair game. That was how the district court itself understood its ruling. The next day, sua sponte, the court came back and apparently looked at the exact parsing of words and said, well, no, it was only if it opened the door. And so the government's question didn't open the door. So even if it's error, it wasn't plain because all parties understood that, or believed, including the district court at the time, that polygraph, the mention of the polygraph could come in. He never took a polygraph. Why not? Because he started to confess. That's why it happened. And it came up in the rebuttal. And it came up in the rebuttal because the defense counsel started to try to make hay with that, saying they suddenly switched tactics. The recorded interview was supposed to occur, but it never did. This is a manipulation. That was the essence of the closing argument. And all the Assistant United States Attorney did was come in and say the polygraph didn't go forward because it didn't need to. The defendant had an emotional break and signed this confession or apology letter or whatever you want to call it. All that testimony had already come in, much of it elicited by the defendant himself when he testified, after the curative instruction was given, after the district court clarified its ruling. And so whether it was an error, I'm not conceding it was an error. I'm conceding that St. Clair is a little confusing. And I agree that he's hoarding out on St. Clair and NC and other cases, including Hudspeth, which came out two weeks ago. Hudspeth is a very interesting case. This court issued, I think, on April 24th. There, it was the same, actually the same judge in the District of South Dakota, the same type of case, sexual assault. The defense attorney was trying to get in the polygraph, the fact that a polygraph had been taken. The district court weighed it, looked at St. Clair, in that case, too, the same district court, and said, no, it shouldn't come in. This court held, well, even if it should have come in, it didn't say categorically it can never come in. This court said, it's a harmless error analysis. And that really wasn't weighty enough for the defense to try to get it in himself in that particular case. This is the mirror image of it, of Hudspeth, because here, although the defense changed tactics, in the end, it was complaining about the polygraph being in after asking for its motion to be withdrawn. But it stands for the same principle. You do look, you do a harmless error analysis. And also, this invited reply doctrine, which is a footnote in Hudspeth, but we raised in our brief before Hudspeth came out, the Isaacs decision and the sports decision, where you bring something up in closing argument and try to suggest something, it's fair for the government to give the reason why that happened. It's fair reply. And that's what happened in this case. It was fair to give that explanation once they were being accused of using this manipulative tactic and suddenly not recording. And why didn't they record? What was that about? Well, here's what it was about. It was going to be recorded. Do you take the position that harmless error could apply here? We do, we do. Would you give your strength? Yeah, harmless error, because there was a curative instruction and because of the strength of the evidence. We have an eyewitness, which really, the evidence here mirrors Judge Rollman's decision in the Lowndes case and I think the Schoenborn case we both cited. An eyewitness, someone is moving up and down with unzipped pants on a little girl with their underwear down and pants down. We see that happening. The little girl gets up and complains about being hurt, walking, and it hurts. She doesn't say, this didn't happen to me. She says, I don't want to talk about what happened to me, this little six-year-old girl. And in Lowndes, Judge Rollman very persuasively takes you through why that's not a denial and that's still evidence that comes in and that's why you can use these sexual exam results. And then we find male DNA in the underwear on the outside of the genitalia. I mean, there is more than sufficient evidence. This was proved beyond a reasonable doubt. Any mention of the polygraph, which the defendant wanted to withdraw their motion in limiting on that and thought it had, was harmless. Thank you, Your Honor. We ask you to affirm. Thank you, Mr. Parsons. Mr. Miller, your rebuttal. Yes, and St. Clair is quite clear that polygraph evidence cannot, is not, refusal evidence is just not admissible. In fact, that was, excuse me, the starting point in St. Clair. The issue in St. Clair was really whether or not the curative instruction was adequate to cure the prejudice. And when you look at what happened here, opposing counsel said that this Court kind of opened up the door to discuss polygraph evidence, but that's not what happened here. The Court's ruling was it would, quote, allow defense to ask questions about whether it was recorded, and if not, why not? That's nothing to do with a polygraph. That was not permission even for defense to get in the polygraph. And if that opens the door to the polygraph, then that's fine. So, yes, so if the defense questions happened to open the door, it would have been fine. But the government jumped right in from its opening statement, starting talking about polygraphers, it got into it with Agent Waters and its direct testimony, and most importantly, with Cain, where it specifically elicited this evidence of the polygraph refusal. And then after there was a limiting instruction saying that to disregard polygraph evidence, the government decides to dive into it again in its rebuttal closing argument. And quickly, as far as prejudice, it's up to the jury to decide who was credible, if his apology statement was credible or if his trial testimony was credible. This was, I believe, a 13-year-old child who came in and thought she saw what she saw, but that's up to the jury whether or not she saw what she saw. And I don't have enough time to get into all the facts, but I think that it's, you know, Mr. Rondue's position was he was not the type of person who would ever do this, and he couldn't remember because of his condition. And the error here was prejudicial and not harmless. And with that, I would ask that this Court reverse Mr. Rondue's conviction or the alternative reverse and remand for new trial. Thank you. Mr. Miller, the Court wishes to thank both counsel for your participation in argument before the Court this morning. We'll take the case under advisement. Madam Clerk, I believe that concludes our assigned proceedings for this morning. Yes, Your Honor. That being the case, the Court will be in recess until tomorrow morning at 9 a.m.